**Affirmed and Memorandum Opinion filed April 5, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00827-CV

---

## THOMPSON HANCOCK WITTE & ASSOCIATES, INC., Appellant

## V.

## BRAZOS PRESBYTERIAN HOMES, INC., Appellee

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-81155**

---

### MEMORANDUM OPINION

Appellant, Thompson Hancock Witte & Associates, Inc. ("Thompson Hancock"), is an architecture firm that performed design work on a multi-story building owned by appellee, Brazos Presbyterian Homes, Inc. ("Brazos"). After Hurricane Harvey caused flooding to Brazos' building, Brazos added Thompson Hancock as an additional defendant in an existing lawsuit related to the construction of the same building. Brazos alleged Thompson Hancock defectively designed parts of the building which in turn caused the flooding. Thompson

Hancock eventually filed a motion to dismiss Brazos' lawsuit against it pursuant to Chapter 150 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 150.002 (authorizing dismissal of claim for damages arising out of the provision of professional architectural services if a claimant fails to file with the complaint a certificate of merit prepared by an architect holding the "same professional license or registration as the defendant"). Thompson Hancock argued Brazos' lawsuit against it should be dismissed because the architect who prepared Brazos' certificate of merit did not hold the same professional license as Thompson Hancock and was not engaged in the practice of architecture. The trial court denied Thompson Hancock's motion and Thompson Hancock filed this interlocutory appeal.[1] Because we conclude Brazos' architect met the statutory license requirement, we overrule Thompson Hancock's issue on appeal and affirm the trial court's denial of Thompson Hancock's motion to dismiss.

## BACKGROUND

This appeal stems from a construction project. Brazos owns Bayou Manor, a senior living community in Houston. Brazos wanted to add a residential tower to Bayou Manor and it contracted with architectural firm Thompson Hancock to design the addition. Brazos contracted with another company, Lendlease (US) Construction, Inc., to serve as general contractor on the project. Issues arose and eventually Brazos filed suit against Lendlease alleging breach of contract and other

---

[1] Thompson Hancock originally raised two issues in its appellant's brief. Thompson Hancock's second issue challenged the granting of the Chapter 150 motion seeking dismissal of Thompson Hancock's claims against third-party defendant engineering firm Stanley Spurling & Hamilton, Inc. After the filing of this interlocutory appeal, the engineering firm moved to sever Thompson Hancock's dismissed claims against it into a separate action. The trial court granted the severance thereby making the interlocutory dismissal order final and appealable. Thompson Hancock appealed the dismissal in a separate appeal, Cause Number 14-21-00091-CV. Thompson Hancock notified us that it was challenging the dismissal of its claims against the engineering firm in that appeal. We therefore need not address Thompson Hancock's second issue in this appeal.

causes of action.

Not long after the lawsuit was filed, the Bayou Manor campus flooded during Hurricane Harvey and it allegedly sustained substantial damage. Brazos believed the flooding was caused, at least in part, by Thompson Hancock's improper design of a retaining wall. Brazos then added Thompson Hancock as a defendant in its Second Amended Petition in the ongoing lawsuit against Lendlease. Brazos attached a certificate of merit prepared by Daniel Figert, a licensed architect emeritus in the State of Texas, to its petition. In addition to explaining his qualifications and experience as an architect, Figert opined that Thompson Hancock breached the pertinent standard of care through design defects and other errors and omissions.[2]

Thompson Hancock filed its original answer in December 2018. Thompson Hancock eventually filed a motion to dismiss Brazos' claims against it due to an allegedly inadequate certificate of merit in August 2020.[3] Thompson Hancock challenged only Figert's qualifications to prepare the certificate of merit. In Thompson Hancock's view, Figert is not qualified to prepare a certificate of merit in the present case because he holds an emeritus-architect license, which

---

[2] Figert explained in the challenged certificate of merit that he obtained a Bachelor of Architecture degree from the University of Illinois at Urbana-Champaign in 1969 and that he holds a Texas architect's license. Figert also explained that he had worked as an architect, design-build construction company manager, developer, and project manager in the profession since 1968 and he continued to work in that capacity at the time he prepared the challenged certificate of merit.

[3] In the interval between these two events, Thompson Hancock actively participated in the ongoing litigation. This included participating in extensive written discovery, numerous depositions of fact and expert witnesses, and filing a third-party petition against the engineering contractor on the job alleging it was responsible for the flooding. It also agreed to a continuance of the trial date. Based on these and other litigation activities, Brazos also argued in response to Thompson Hancock's motion to dismiss that Thompson Hancock had waived the right to a Chapter 150 motion to dismiss due to an inadequate certificate of merit. It makes the same argument in this appeal. Because we conclude Figert met the statutory requirements to prepare the challenged certificate of merit, we need not reach Brazos' waiver defense.

Thompson Hancock argues is different from the license held by the architect of record on the project. Thompson Hancock also argued that Brazos' certificate of merit failed to meet the requirements of Chapter 150 because Figert allegedly could not actively engage in the practice of architecture as a result his emeritus status.

Thompson Hancock relied on excerpts from a deposition Figert gave in a different lawsuit to support its contentions. According to Thompson Hancock, Figert agreed during his deposition that his emeritus-architect license was a different type of license than a non-emeritus license. Brazos later obtained a full copy of the deposition transcript at issue. According to Brazos, Figert did not testify as alleged by Thompson Hancock but instead testified that there are no "degrees" of architect licensing in Texas and that, as an emeritus-status architect, he held the same license as any non-emeritus, active-status architect.[4] In addition, Brazos also pointed out that during his deposition Figert testified that emeritus status for an architect in Texas is a designation or an honor given to an architect with the required number of years of practice and who meets the qualifications.

After an oral hearing, the trial court denied Thompson Hancock's motion to dismiss. This interlocutory appeal followed.

**ANALYSIS**

Thompson Hancock raises a single issue on appeal challenging the trial court's denial of its motion to dismiss. Thompson Hancock argues that the trial court erred when it denied the motion because Figert did not meet the statutory qualifications to prepare a certificate of merit because he (1) did not hold the same

---

[4] The Texas Occupations Code establishes an inactive status for architects who apply for that status. *See* Tex. Occ. Code § 1051.355. An inactive architect "may not perform any activity regulated under this [architecture] subtitle." *Id.*

4

architect license as Thompson Hancock, and (2) was not actively engaged in the practice of architecture.[5] (BR11)

## I.    Standard of review

This is an interlocutory appeal from the trial court's denial of Thompson Hancock's motion to dismiss filed pursuant to Chapter 150 of the Texas Civil Practice and Remedies Code. None of the facts relevant to this interlocutory appeal are disputed. Instead, the issue before us involves the proper construction of specific statutory provisions and application of those provisions to the undisputed facts of the case. This presents a question of law that we review de novo. *See LaLonde v. Gosnell*, 593 S.W.3d 212, 220 (Tex. 2019) ("Deference must be afforded to the trial court's disposition of disputed facts, but when there are none, as here, our review is entirely de novo.").

This appeal also requires us to review the trial court's interpretation and application of various statutes. Statutory interpretation presents a question of law subject to de novo review. *Bracey v. City of Killeen*, 417 S.W.3d 94, 103 (Tex. App.—Austin 2013, no pet.). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We first look to the statute's text to determine the legislature's intent. *Id.* When the statutory text is clear, it is determinative of the legislature's intent. *Id.* at 104. In that situation, we give the statute its plain meaning without resorting to rules of construction or extrinsic aids. *Id.* Only when a statute is susceptible to more than one reasonable interpretation does a court look beyond its language for assistance in determining legislative intent. *Id.* We view statutory terms in context, giving them full effect. *Id.* at 103. We presume that every word of a statute was used for a purpose, and every omitted

---

[5] Thompson Hancock does not otherwise challenge Figert's qualifications to render an expert opinion in this case.

word was purposefully not chosen. *Texas Law Shield LLP v. Crowley*, 513 S.W.3d 582, 588 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In determining the plain meaning of a statute, we construe the language according to the rules of grammar and common usage. *Id.* "As a general principle, we eschew constructions of a statute that render any statutory language meaningless or superfluous." *City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 57 (Tex. 2015). When construing statutes, "we are bound to apply the statutory definition in deciding the question before us." *Nelson v. Union Equity Co-op. Exch.*, 548 S.W.2d 352, 355 (Tex. 1977). Finally, we presume that the Legislature was aware of the background law and acted with reference to it when it enacts a statute. *Bracey*, 417 S.W.3d at 104; *see In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (stating courts presume that the Legislature uses statutory language "with complete knowledge of the existing law and with reference to it.").

## II. The trial court did not err when it denied Thompson and Hancock's motion to dismiss.

The ultimate issue to be resolved in this appeal is whether Figert, an architect holding an architect-emeritus license, is qualified to render a certificate of merit opinion in a case alleging claims against Thompson Hancock, whose architect of record holds a non-emeritus architect's license. Based on the plain language of the pertinent statutory provisions, we conclude that he can.

Section 150.002 of the Texas Civil Practice and Remedies Code generally requires that a plaintiff file a certificate of merit affidavit contemporaneously with the first-filed complaint alleging claims against licensed professionals such as architects. *See* Tex. Civ. Prac. & Rem. Code § 150.002; *Texas Southern University v. Kirksey Architects, Inc.*, 577 S.W.3d 570, 575–76 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The affidavit must be prepared by a third-party professional,

6

licensed or registered in Texas, who holds "the same professional license or registration as the defendant." Tex. Civ. Prac. & Rem. Code § 150.002. The third-party licensed professional must also be actively practicing in the same "area of practice of the defendant." *Id.* The affiant must offer testimony based on the affiant's knowledge, skill, experience, education, training, and practice, and the affidavit must set forth the actions, errors, or omissions of the licensed-professional defendant and the factual basis for each claim asserted by the plaintiff. *Id.* The plaintiff's claims are subject to dismissal if the plaintiff fails to file an affidavit that complies with the statute. *Id.*

The Occupations Code defines an "architect" as "a person registered under this chapter to engage in the practice of architecture." Tex. Occ. Code § 1051.001 (1). It also defines the "practice of architecture" as

> a service or creative work applying the art and science of developing design concepts, planning for functional relationships and intended uses, and establishing the form, appearance, aesthetics, and construction details for the construction, enlargement, or alteration of a building or environs intended for human use or occupancy, the proper application of which requires education, training, and experience in those matters. The term includes: . . . (F) consulting, investigating, and analyzing the design, form, aesthetics, materials, and construction technology used for the construction, enlargement, or alteration of a building or environs and providing expert opinion and testimony as necessary . . . .

*Id.* § 1051.001(7).

The Occupations Code also creates an emeritus status for certain architects. *See id.* § 1051.357. It provides that an architect may apply for emeritus status if the architect has been "an architect for 20 years or more" and is "65 years of age or older." *Id.* The statute further provides that an emeritus architect "may engage in the practice of architecture as defined by Sections 1051.001(7)(D), (E), (F), (G),

7

and (H)." *Id.* § 1051.357(c)(1).

As pointed out above, Thompson Hancock argues that Figert was not qualified to prepare the certificate of merit in this case because he did not have a non-emeritus status architect license like Thompson Hancock's architect of record. Thompson Hancock continues that since Figert, as an emeritus architect, was prohibited from serving as the architect of record on the Brazos project due to restrictions on an emeritus architect, he could not prepare a certificate of merit in litigation growing out of that project. Thompson Hancock also argues that Figert could not prepare the certificate of merit in this case because he was not actively engaged in the practice of architecture. The statutory language does not support Thompson Hancock's arguments.

We turn first to Thompson Hancock's second contention, that Figert was not actively engaged in the practice of architecture when he prepared the certificate of merit. In making this argument, Thompson Hancock either confuses emeritus-architect status with inactive status, or it ignores the existence of the emeritus-architect statute and large parts of the statutory definition of the "practice of architecture." *Compare* Tex. Occ. Code § 1051.357(c)(1) (authorizing emeritus architect to "engage in the practice of architecture as defined by Sections 1051.001(7)(D), (E), (F), (G), and (H)") *with* Tex. Occ. Code § 1051.355 (providing that an inactive architect "may not perform any activity regulated under this [architecture] subtitle."). As explained below, emeritus architects such as Figert are statutorily authorized to practice architecture in several ways including providing expert opinions. *See* Tex. Occ. Code § 1051.357(c)(1). Therefore, Figert was actively engaged in the practice of architecture when he prepared the challenged certificate of merit affidavit. *Id.*

8

Turning to Thompson Hancock's first argument, it is undisputed that Figert was a licensed architect in the State of Texas at the time the certificate of merit was filed in this case and therefore he could engage in the practice of architecture. *See* Tex. Occ. Code § 1051.001(1) (defining "architect" to "mean a person registered under this chapter to engage in the practice of architecture"). Despite this undisputed fact, Thompson Hancock argues Figert was not qualified to prepare the certificate of merit because, as an emeritus architect, he was not allowed to perform certain aspects of the "practice of architecture" that a non-emeritus architect could perform. In making this argument, Thompson Hancock focuses exclusively on only one part of the definition of the "practice of architecture" and ignores the part of the definition relevant to this appeal.

An emeritus architect, such as Figert, is statutorily authorized to consult, investigate, and analyze buildings and their environs and then render "expert opinions" regarding the "design, form, aesthetics, materials, and construction technology used for the construction, enlargement, or alteration of" those buildings or environs. *Id.* § 1051.001(7)(F). The statute does not limit an emeritus architect to rendering opinions about only those buildings, if any, on which the emeritus architect could serve as the architect of record. Inserting this limitation into the statute would add language to the statute. This we cannot do. *See City of Rockwell v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008) ("If the Legislature desires to amend the statute to add words so that the statute will then say what it is contended for by the Estate, we are confident it will do so. However, changing the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function."). If the Legislature wished to limit the types of expert opinions an emeritus architect could render, it could have added appropriate limiting language to the emeritus-architect statute. *See id.* We must take heed of the Legislature's

9

decision not to include such language. *Texas Law Shield LLP*, 513 S.W.3d at 588 ("We presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen."). We must also presume that the Legislature was aware of the law governing architects, the practice of architecture, and certificates of merit when it enacted the emeritus-architect statute which authorizes emeritus architects to render expert opinions. *Bracey*, 417 S.W.3d at 103–04 ("We assume that when enacting a statute, the Legislature was aware of the background law and acted with reference to it."). Finally, if we were to adopt Thompson Hancock's construction of the certificate of merit statute, it would render parts of the emeritus-architect statute, and the statutory definition of the practice of architecture, meaningless. This we also cannot do. *See Walsh v. Tex. Department of State Health Services*, 634 S.W.3d 496, 505 (Tex. App.—Houston [14th Dist.] 2021, pet. filed) ("In addition, adopting Walsh's proposed definition making all death information filed with DSHS except the actual death certificate subject to immediate public disclosure, would render the legislature's express creation of a summary death index, which is public information, superfluous."). We conclude Figert was statutorily authorized and otherwise qualified to prepare the challenged certificate of merit. We therefore overrule Thompson Hancock's issue on appeal.

## CONCLUSION

Having overruled Thompson Hancock's single remaining issue in this appeal, we affirm the trial court's order denying Thompson Hancock's motion to dismiss.


/s/    Jerry Zimmerer
Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.